IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

LEON TOLLETTE,             :
                               :
           Petitioner,    :
                               :
        VS.            :
                               :   NO. 4:14-CV-110 (CDL)
WARDEN, Georgia Diagnostic   :
and Classification Prison,   :
                               :
          Respondent.    :

## ORDER

Pending before the Court is Petitioner Leon Tollette's Motion for Leave to Conduct Discovery and an Evidentiary Hearing. (ECF No. 20). For reasons discussed below, this motion is denied.

I. FACTUAL AND PROCEDURAL HISTORY

Tollette is an inmate on death-row at the Georgia Diagnostic and Classification Prison in Jackson, Georgia. On August 5, 1996,[1] he "was indicted for malice murder, felony murder, armed robbery, and other crimes, stemming from the shooting death of John Hamilton, a Brinks employee who, at the time, was picking up cash from a SouthTrust bank." *Tollette v. State*, 280 Ga. 100, 100, 621 S.E.2d 742, 745 (2005). On November 3, 1997, Tollette pled guilty to all charges in the indictment. (ECF No. 8-21 at 7-8). "At the conclusion of the sentencing trial, the jury fixed the sentence for

---

[1] Tollette was originally indicted by the Muscogee County Grand Jury on March 19, 1996 and reindicted on August 5, 1996. (ECF No. 8-1 at 15-24).

malice murder at death."[2]  *Tollette*, 280 Ga. at 100-01, 621 S.E.2d at 745.

With new counsel, Tollette filed a Motion for New Trial on March 11, 1998 and a First Amended Motion for New Trial on October 20, 1998 (ECF No. 8-5 at 72-86).  After holding an evidentiary hearing, the court denied the motion on January 28, 1999.  (ECF No. 8-5 at 103).

The Georgia Supreme Court affirmed Tollette's conviction and sentence on November 7, 2005.  *Tollette*, 280 Ga. at 100, 621 S.E.2d at 745.

Tollette filed an Application for Writ of Habeas Corpus in the Butts County Superior Court on August 7, 2007.  (ECF No. 9-26). After the court held an evidentiary hearing on January 13, 22-23, 2009, it denied relief in an order dated February 13, 2013.  (ECF Nos. 10-21 to 10-24; 12-24).

Tollette filed an Application for a Certificate of Probable Cause to Appeal ("CPC application") in the Georgia Supreme Court on May 20, 2013.  (ECF No. 12-26).  Finding the "claims properly raised by the Petitioner [were] without arguable merit," the Georgia Supreme Court denied the CPC application on March 28, 2014 and denied

---

[2] The jury found two statutory aggravators:  Tollette committed the murder during the commission of the capital felony of armed robbery and he committed the murder for monetary gain.  *Tollette*, 280 Ga. at 101, 621 S.E.2d at 745.  Tollette was also sentenced to a concurrent life sentence for armed robbery, two concurrent twenty year sentences for the two aggravated assaults, a concurrent sentence of five years for possession of a firearm by a convicted felon, and a consecutive sentence of five years for possession of a firearm during the commission of a crime.  (ECF No. 8-5 at 39-42).

Tollette's Motion for Reconsideration on April 22, 2014.  (ECF Nos. 12-27; 12-29).

Tollette filed a Petition for Writ of Habeas Corpus by a Person in State Custody in this Court on May 6, 2014.  (ECF No. 1).  He raises eight claims and, in the pending motion, seeks discovery and/or an evidentiary hearing regarding three of these claims.

II.   STANDARDS GOVERNING DISCOVERY AND EVIDENTIARY HEARING REQUESTS

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Nor is he entitled to an evidentiary hearing in most cases.  The Supreme Court has explained that "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's[3] statutory scheme is designed to strongly discourage them from doing so."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1401 (2011).

In *Pinholster*, the Supreme Court explained that if a claim has been adjudicated on the merits in state court proceedings, this Court's review under both 28 U.S.C. § 2254(d)(1) and (2)[4] "is limited to the record that was before the state court."  *Id.* at 1398, 1400

---

[3] The Antiterrorism and Effective Death Penalty Act of 1996.

[4] Under the deferential review standard of §2254(d), relief may not be granted for a claim adjudicated on the merits in state court unless the adjudication of the claim (1)"resulted in a decision that was contrary to, or involved an unreasonable application of, … Federal law" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

n.7.  Tollette argues that "*Pinholster's* limitations apply *only* to additional evidence adduced via an evidentiary hearing, not to evidence garnered through discovery."  (ECF No. 20 at 7)(emphasis in original).  For support, Tollette cites Justice Breyer's opinion in *Pinholster*.  (ECF No. 20 at 7) (citing *Pinholster*, 131 S. Ct at 1412 (Breyer, J., concurring in part and dissenting in part)).  Justice Breyer concurred in the Court's opinion that "review is limited to the record that was before the state court that adjudicated the claim on the merits."  *Pinholster,* 131 S. Ct. at 1398 (Breyer, J., concurring in part and dissenting in part)).  He explained that "[a]n offender who believes he is entitled to habeas relief must first present a claim (including his evidence) to the state courts.  If the state courts reject the claim, the federal court may review that rejection on the basis of the materials considered by the state court."  *Id*. at 1412.  According to Justice Breyer, "there is no role in (d) analysis for a habeas petitioner to introduce evidence that was not presented to the state courts."  *Id*.  Based on these statements, the Court cannot agree with Tollette's assertion that Justice Breyer took the "narrower position" that *Pinholster's* limitations do not apply to "evidence garnered through discovery." (ECF No. 20 at 7).

Instead, the Court in *Pinholster* did not address discovery in the context of habeas petitions.  However, its "linkage to … discovery … is unquestionably present.  *Coddington v. Cullen*, No. CIV-S-01-1290 KJM GGH DP, 2011 U.S. Dist. LEXIS 57442 at *2 (E. D.

Cal. May 27, 2011).  After *Pinholster*, this Court cannot hold an evidentiary hearing in which new evidence is introduced to support a claim if the state courts decided the claim on the merits.[5]  Nor can the habeas petitioner expand the record, under Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, to include evidence not considered by the state courts.  *Greene v. Upton*, 644 F.3d 1145, 1160 (11th Cir. 2011).  If this Court cannot consider any newly discovered evidence, "it would seem that obtaining discovery ... would be futile."  *Tharpe v. Humphrey*, No. 5:10-CV-433 (CAR), 2012 U.S. Dist. LEXIS 6824 at *9 (M. D. Ga. Jan. 20, 2012); *see also Runningeagle v. Ryan*, 686 F.3d 758, 773 (9th Cir. 2012) (explaining that a habeas petitioner is not entitled to discovery in federal court because his claim is governed by 28 U.S.C. § 2224(d)); *Moore v. Mitchell*, 708 F.3d 760, 780 (6th Cir. 2013) (explaining that, after *Pinholster*, federal courts cannot consider the "fruits of discovery" even if parties jointly move to admit the evidence into the record).

For claims not decided on the merits in state court, 28 U.S.C. § 2254(e)(2) "restricts the discretion of federal habeas courts to consider new evidence."  *Pinholster*, 131 S. Ct. at 1401.  If a habeas petitioner has failed to develop the factual basis for his claims

---

[5] Of course, if this Court should ultimately find, based solely on the evidence that was presented to the state court, that the state court's decision does not pass §2254(d)'s test, then the Court would not be prohibited from considering newly discovered evidence. *Pinholster*, 131 S. Ct. at 1412 (Breyer, J., concurring in part and dissenting in part).

in state court proceedings as a result of his own lack of diligence, he must satisfy the stringent requirements of 28 U.S.C. § 2254(e)(2) before the Court can allow discovery or hold an evidentiary hearing.[6] *Isaacs v. Head*, 300 F.3d 1232 (11th Cir. 2002); *Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002).

The United States Supreme Court has explained that "[b]y the terms of its opening clause [28 U.S.C. § 2254(e)(2)] applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.'" *Williams v. Taylor*, 529 U.S. 420, 430 (2000) (quoting 28 U.S.C. § 2254(e)(2)). A petitioner has "failed to develop the factual basis of a claim" only if "there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432.

If discovery is not barred by *Pinholster* or § 2254(e)(2), Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[a] judge may, for good cause,

---

[6] 28 U.S.C. § 2254(e)(2) provides:
> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> > (A) the claim relies on--
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  A petitioner establishes "good cause" for discovery if "specific allegations before the court show reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Harris v. Nelson*, 394 U.S. 286, 300 (1969).  "[G]ood cause for discovery cannot arise from mere speculation" and "discovery cannot be ordered on the basis of pure hypothesis." *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006).

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2) [or *Pinholster*], the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007); *see also* Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts. When deciding whether to grant a hearing, the "court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations," taking into consideration the "deferential standards prescribed by 28 U.S.C. § 2254." *Schriro*, 550 U.S. at 474.  An evidentiary hearing is not necessary if the issues can be resolved by reference to the record developed in the state courts.  *Id*.

III.   <u>APPLICATION OF THESE STANDARDS TO TOLLETTE'S REQUESTS</u>

A. Discovery and an evidentiary hearing related to Tollette's
   ineffective assistance of counsel claim

Tollette requests discovery to develop his claim that trial counsel, Stephen Craft and Robert Wadkins, ineffectively used Dr. Daniel Grant, a neuropsychologist they hired to examine Tollette prior to trial.  (ECF No. 20 at 10-16).  He alleges that during the state habeas evidentiary hearing, both Craft and Wadkins were asked why they retained Grant and why they did not let him testify at trial. (ECF No. 20 at 11).  While both lawyers gave different reasons for hiring Grant, they "gave an uncannily identical answer when asked what Dr. Grant ultimately told them about his ability to testify." (ECF No. 20 at 11).  Both lawyers stated that Grant said, "Don't put me on the stand."  (ECF No. 20 at 11).  However, during the state habeas evidentiary hearing, Grant denied making this statement.  He testified that he asked Wadkins how the information he gathered might be helpful, questioned how he could testify, and told both lawyers that prison adaptability was a legitimate avenue they should pursue. (ECF No. 20 at 11-12).

According to Tollette, this "raises at least a plausible likelihood" that trial counsel conspired to fabricate a story to cover-up the real reason they failed to call Grant to testify—their "inattention at the time of trial."  (ECF No. 20 at 12).  In order to find evidence of this conspiracy, Tollette asks the Court to order

Wadkins and Craft to turn over any "documented communication"[7] regarding his case that took place between them from the date Tollette's state habeas petition was filed, August 7, 2007, until the date the state habeas evidentiary concluded, January 23, 2009. (ECF No. 20 at 14).  Tollette also seeks to depose or submit interrogatories to Wadkins, Craft, and Grant.  Finally, "Tollette submits an evidentiary hearing is appropriate to sort through these factual discrepancies."  (ECF No. 20 at 15).

The first question is whether the state courts decided this ineffective assistance of counsel claim on the merits.  Georgia law provides that "a claim of ineffectiveness of trial counsel must be asserted at 'the earliest practicable moment.'"  *Bailey v. State*, 264 Ga. 300, 300, 443 S.E.2d 836, 837 (1994) (quoting *Smith v. State*, 255 Ga. 654, 656, 341 S.E.2d 5, 6 (1986)).  Because new counsel, David Grindle, was appointed to represent Tollette during his motion for new trial, he had to raise his ineffective assistance of trial counsel claim during those proceedings.  He did so. (ECF No. 8-5 at 84).

The court conducted a hearing regarding this claim on January 25, 1999.  (ECF No. 9-2).  The State called Wadkins to testify and questioned him regarding the retention of Grant.  (ECF No. 8-5 at 45).  Wadkins stated that he asked Grant to evaluate Tollette to find any possible mitigating evidence and, after his examination, "Grant

---

[7] This includes all "emails, inter- or intra-office memoranda, letters, documentation regarding phone calls, notes of meetings, and any other memorializations of interactions relating to Mr. Tollette's case."  (ECF No. 20 at 14).

called … and said don't put me on the stand, don't use me."  (ECF No. 9-2 at 45).  Grindle cross-examined Wadkins regarding his failure to call Grant to testify.  (ECF No. 8-5 at 63-72).  Tollette currently complains that he did not receive a "'full and fair state court hearing'" because Grindle put up no evidence during the motion for new trial hearing.  (ECF No. 22 at 5) (quoting *Boyd v. Allen*, 592 F.3d 1274, 1304 (11th Cir. 2010)).  However, the record does not disclose that Grindle was prevented from presenting any evidence or testimony.  It appears that he simply chose not to do so.  Following the hearing, the state habeas court summarily denied Tollette's motion for new trial.  (ECF No. 8-5 at 103).

On direct appeal, appellate counsel argued that trial counsel improperly failed to present testimony from Grant.  (ECF No. 9-4 at 45).  The Georgia Supreme Court "concluded that the trial court did not err in denying Tollette's claim of ineffective assistance of counsel."  *Tollette*, 280 Ga. at 107, 621 S.E.2d at 750.  No one disputes this was a decision on the merits.

Tollette raised his trial counsel ineffectiveness claim again before the state habeas court and that court concluded the claim was "barred by res judicata."  (ECF No. 12-24 at 5).  Tollette correctly asserts that, despite this bar, the claim is "ripe for a merits review in this federal habeas proceeding."  (Doc. 20 at 10).  That review, however, is governed by 28 U.S.C. § 2254(d) because the Georgia Supreme Court decided the claim on the merits.  Thus, this Court must determine whether [Tollette] has satisfied § 2254(d) based only on

the "record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S. Ct. at 1398.  Tollette cannot "overcome [the Georgia Supreme Court's] adverse … decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*."  *Id*. at 1399.  Therefore, this Court denies Tollette's request for discovery and an evidentiary hearing regarding this issue.[8]

Tollette argues that a federal court's review is restricted to the record that was before the state court only when the claim was decided on the merits during the post-conviction process, not during the direct appeal.  (ECF No. 22 at 4).  *Pinholster* contains no such restriction.  Whenever a claim has been decided on the merits in the state courts, whether on direct appeal or post-conviction, this Court's review of that claim is governed by § 2254(d).  According to *Pinholster*, any review under § 2254(d) "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Pinholster*, 131 S. Ct. at 1398.

While not necessary to its decision, the Court notes that Tollette's ineffective assistance of trial counsel claim was found to be meritless on two occasion subsequent to the Georgia Supreme

---

[8] Should the Court ultimately determine that the Georgia Supreme Court's decision on this issue was based on unreasonable factual findings, was contrary to federal law, or involved an unreasonable application of federal law, the Court would no longer be prohibited from considering new evidence. *Pinholster*, 131 S. Ct. at 1412 (Breyer, J., concurring in part and dissenting in part).  Therefore, if, after reviewing the parties' merits briefs, the Court makes such a decision, it will revisit this issue.

Court's decision.   First, during his state habeas proceedings, Tollette presented a cascading ineffective assistance of counsel claim:   Direct appeal counsel was ineffective for not presenting a claim that motion for new trial counsel was ineffective for not properly litigating trial counsel's effectiveness.   (ECF No. 12-24 at 20).   To decide whether Tollette "was prejudiced by direct appeal counsel's failure to raise ineffectiveness against prior counsel, the habeas court '[had to] examine the underlying ineffectiveness of trial counsel claim and determine whether that claim would have had a reasonable probability of success.'"   (ECF No. 12-24 at 20) (quoting *Hall v. Lewis*, 286 Ga. 767, 770, 692 S.E.2d 580, 586 (2010)). After examining the evidence presented at the state habeas evidentiary hearing, the court concluded "Tollette has not satisfied his burden of showing that trial counsel's preparation for the mitigation phase was inadequate or that he was prejudiced by their pre-trial decisions."   (ECF No. 12-24 at 43).   Because Tollette's underlying ineffective assistance of trial counsel claim lacked merit, the state habeas court found that his ineffective assistance of direct appeal counsel claim lacked merit.   (ECF No. 12-24 at 42).

Second, in his CPC application, Tollette included his claim regarding trial counsel's failure to call Grant.   (ECF No. 12-26 at 32-42).   The Georgia Supreme Court denied the application, finding that all "claims properly raised by the Petitioner are without arguable merit."   (ECF No. 12-27 at 2).   The Eleventh Circuit recently held that the Georgia Supreme Court's denial of a CPC

application "clearly constitutes an adjudication on the merits for AEDPA purposes." *Hittson v. Warden*, 759 F.3d 1210, 1232 (11th Cir. 2014).  The Court instructed district courts to presume the Georgia Supreme Court reviewed the record and denied each of the claims contained in the CPC application on the merits.  *Id*. at 1232-33, 1252 (explaining that although the state habeas court found a particular claim to be procedurally defaulted, the federal court must presume the Georgia Supreme Court rejected the claim "on the merits" when it summarily denied the CPC application as having "no arguable merit").  Under *Hittson*, the Georgia Supreme Court decided Tollette's ineffective assistance of trial counsel claim "on the merits" and, therefore, this Court could not consider newly discovered evidence when it reviewed that decision under § 2254(d).

Even without considering the state habeas court's order or the denial of Tollette's CPC application, the Georgia Supreme Court clearly decided this claim on the merits during the direct appeal. Therefore, the Court's review is limited to the state court record and this Court denies Tollette's request for discovery and an evidentiary hearing.

B. <u>Discovery related to the Georgia Supreme Court's proportionality review</u>

O.C.G.A. §17-10-35(c)(3) requires the Georgia Supreme Court to determine "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."  In Tollette's direct

appeal, the Georgia Supreme Court, citing 23 cases, found that "considering both the crime and the defendant, … the death sentence imposed for the murder in this case was neither excessive nor disproportionate to the penalties imposed in similar cases in Georgia." *Tollette*, 280 Ga. at 107-08, 621 S.E.2d at 750. Tollette alleges Georgia's proportionality review of death sentences is "constitutionally infirm in general and as applied." (ECF No. 20 at 16). He complains that the Georgia Supreme Court conducts only a "perfunctory proportionality analysis," which leads to the arbitrary or discriminatory imposition of death sentences. (ECF No. 20 at 22-23). He also alleges the cases cited by the Georgia Supreme Court are easily distinguishable from his case and many of the cited cases involve defendants who are no longer under a death sentence.

To support his claim that Georgia's proportionality review is infirm, he seeks to depose "at least one person employed with the Georgia Supreme Court with an understanding of the court's process of evaluating, reviewing, researching, and drawing conclusions regarding proportionality." (ECF No. 20 at 23). If that particular person was not "involved in making proportionality determinations in 2005 when Mr. Tollette's direct appeal was decided," he wants to depose another person who was employed by the court during that time. (ECF No. 20 at 23). Finally, "Tollette requests any documents held by the Supreme Court of Georgia related to the process for conducting proportionality reviews in that court in all capital cases from January 2005 to the present." (ECF No. 20 at 23).

Tollette overlooks the fact that the United States Supreme Court has held the Constitution does not require a proportionality review in any form and has explicitly found it would be error to conclude "that *Gregg [v. Georgia*, 428 U.S. 153 (1976)] required proportionality review." *Pulley v Harris,* 465 U.S. 37, 46 (1984). The Court explained that it has "emphasiz[ed] the importance of mandatory appellate review under the Georgia statute, … [but has not held] that without comparative proportionality review the statute would be unconstitutional." *Id.* at 50 (*citing Zant v. Stephens*, 462 U.S. 862 (1983)). Furthermore, the Court explained that "[p]roportionality review [is] considered to be an additional safeguard against arbitrarily imposed death sentences," but it has never held that "comparative review [is] constitutionally required." *Id*; *See also McClesky v. Kemp*, 481 U.S. 279, 306-307 (1987) (holding that "absent a showing that the Georgia capital punishment system operates in an arbitrary and capricious manner, [the petitioner] cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did *not* receive the death penalty"). Thus, Petitioner's claim does not entitle him to habeas relief and, therefore, there is no good cause for discovery.

In addition, when state law requires proportionality review, the Eleventh Circuit has cautioned as follows:

> A federal habeas court should not undertake a review of the state supreme court's proportionality review and, in effect, "get out the record" to see if the state court's finding of fact, their conclusion based on a review of similar cases, was supported by the "evidence" in the

> similar cases.   To do so would thrust the federal
> judiciary into the substantive policy making area of the
> state.   It is the state's responsibility to determine the
> procedure to be used, if any, in sentencing a criminal to
> death.

*Moore v. Balkcom*, 716 F.2d 1511, 1518 (11th Cir. 1983).

Furthermore, the Eleventh Circuit has specifically rejected the argument that federal law requires state courts to "make an explicit detailed account of their comparison." *Lindsey v. Smith*, 820 F.2d 1137, 1154 (11th Cir. 1987).   In doing so, the Court held as follows:

> The Constitution does not require a proportionality
> review.   And we refuse to mandate as a matter of federal
> constitutional law that where, as here, state law requires
> such review, courts must make an explicit, detailed
> account of their comparisons.   Based on their own past
> experience in reviewing capital punishment cases, state
> appellate courts can rationally distinguish between those
> individuals for whom the death penalty is an appropriate
> sanction and those for whom it is not, without listing in
> their opinions the facts that did or did not justify the
> imposition of the death penalty in the prior cases.

*Id.* (internal citations and quotation marks omitted).

Given the fact that proportionality review is not required by the Constitution, or any other federal law, and because the Eleventh Circuit precedent expressly forbids a case-by-case comparison of the review undertaken by the Georgia Supreme Court, Tollette's request for discovery on the this issue is denied.

C. <u>Discovery related to Georgia's lethal injection procedure</u>

In his habeas petition, Tollette contends that the State of Georgia will violate his constitutional rights if it executes him in accordance with Georgia's Lethal Injection Secrecy Act ("Secrecy

Act"), O.C.G.A. § 42-5-36(d), which became effective on July 1, 2013.[9] (ECF No. 20 at 23, 25 n.13).  He argues that "[i]n enacting the Secrecy Act, the State has announced that it intends to use a drug of unknown provenance, purchased from a compounding pharmacy whose experience and manufacturing protocols remain a mystery, and composed of ingredients the identity, purity, and freedom from contamination of which are unknown."  (ECF No. 20 at 25-26). Tollette claims the Secrecy Act forces all death row inmates and the courts to operate with no means of determining whether the drugs the State of Georgia selects will pass constitutional muster or whether the inmates will be subjected to unconstitutional pain and suffering in violation of the Eighth Amendment.  (ECF No. 20 at 26).

Tollette requests the following discovery:  The names of the compounding pharmacies that manufacture pentobarbital for Georgia; the names of the sources from which the compounding pharmacies are obtaining their active pharmaceutical ingredients for the compounded pentobarbital;  the qualifications of those employed at the compounding pharmacies and at the sources involved in manufacturing the active pharmaceutical ingredients; and the names and qualifications of the prescribers of lethal injection drugs to the Georgia Department of Corrections.  (ECF No. 20 at 26-27).

Respondent argues that Tollette's lethal injection claim is not

---

[9] The Georgia Supreme Court recently determined the Secrecy Act was constitutional.  *Owens v. Hill*, 295 Ga. 302, 758 S.E.2d 794 (2014) *petition for cert. filed*, No. S14A0092 (U.S. filed Aug. 22, 2014).

properly before the Court because the correct way to challenge lethal injection procedures is by filing a 42 U.S.C. § 1983 action.  (ECF No. 21 at 30).  The Eleventh Circuit has held that "[a] [42 U.S.C.] § 1983 lawsuit, not a habeas proceeding, is the proper way to challenge lethal injection procedures." *Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1261 (11th Cir. 2009) (citing *Hill v. McDonough,* 547 U.S. 573, 579-83 (2006)); see also *McNabb v. Comm'r, Ala. Dep't of Corr.,* 727 F.3d 1334 (11th Cir. 2013).  Tollette, citing *Wellons v. Hall*, 554 F.3d 923 (11th Cir. 2009), *vacated on other grounds,* 558 U.S. 220 (2010), maintains that "[t]he Eleventh Circuit has also reached the merits of a lethal injection claim in a habeas proceeding."  (ECF No. 19 at 6-7).

"[I]n a State where the legislature has established lethal injection as the method of execution, 'a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself.'"  *Hill*, 547 U.S. at 579 (quoting *Nelson v. Campbell*, 541 U.S. 537, 644 (2004)).  Thus, when a prisoner challenges lethal injection as a general matter, he is challenging the lawfulness of his sentence and should bring the claim in a habeas action.  *Id*.  As a practical matter, Tollette does not need discovery to support a claim that lethal injection, regardless of the protocols and procedures used, is unconstitutional.  However, it would appear that such an attack is foreclosed by numerous cases upholding the constitutionality of lethal injection.  *See Baze v. Rees*, 553 U.S. 35 (2008); *DeYoung v.*

*Owens*, 646 F.3d 1319 (11th Cir. 2011).  If "[t]he complaint does not challenge the lethal injection sentence as a general matter but seeks instead only to enjoin respondents 'from executing [the prisoner] in the manner they currently intend,'" § 1983 is the appropriate vehicle for relief.  *Hill*, 547 U.S. at 580 (citations omitted).

Tollette argues that his challenge, if successful, "necessarily would bar his execution under the current state of the law in Georgia."  (ECF No. 22 at 11).  Just as in *Hill*, if Tollette's Eighth Amendment claim is ultimately successful, it "would not necessarily prevent the state from executing him by lethal injection."  *Hill*, 547 U.S. at 581.  For example, if Tollette established that the compounding pharmacy or nature of the drug obtained by the State posed "a substantial risk of serious harm," the State could potentially still carry out his execution by obtaining a different drug from an alternate source, whether that source was a different compounding pharmacy or some other drug manufacturer.  *Farmer v. Brennan,* 511 U.S. 825, 847 (1994).

The Court finds the Eleventh Circuit's holding in *McNabb* instructive:

> [Petitioner] contends that the district court erred in dismissing his claim that Alabama's lethal injection protocol is unconstitutional.  He asserts that because his claim challenges the entire method of execution … the district court erred in dismissing his claim because it determined that the claim was more properly cognizable in a 42 U.S.C. § 1983 action.  His contention fails.
>
> Issues sounding in habeas are mutually exclusive from those sounding in a § 1983 action.  The line of demarcation between a § 1983 civil rights action and a § 2254 habeas

claim is based on the effect of the claim on the inmate's conviction and/or sentence. A claim is properly raised under § 1983 when an inmate challenges the circumstances of his confinement but not the validity of his conviction and/or sentence. By contrast, habeas corpus law exists to provide a prisoner an avenue to attack the fact or duration of physical imprisonment and to obtain immediate or speedier release.

Usually, an inmate who challenges a state's method of execution is attacking the means by which the State intends to execute him, which is a circumstance of his confinement. It is not an attack on the validity of his conviction and/or sentence. For that reason, a § 1983 lawsuit, not a habeas proceeding, is the proper way to challenge lethal injection procedures. Hence, we conclude that the district court did not err in dismissing [Petitioner's] lethal injection challenge in his federal habeas petition. That avenue of relief is still available to him in a § 1983 action.

*McNabb,* 727 F.3d at 1344; *see also Hill, 295 Ga. at 306, 738 S.E.2d at 799* (explaining that "a habeas petition may only allege constitutional defects in a conviction or sentence itself, not defects in the manner in which a sentence is carried out by various state officers").

Even if Tollette's lethal injunction claim was cognizable in this action, the Court finds that he has not established good cause for his discovery requests. Any discovery regarding Georgia's current lethal injection procedures is likely to have no relevance when, and if, Tollette's execution is scheduled. As the Georgia Supreme Court noted, Georgia has recently found it necessary to make repeated alterations to its lethal injection procedures. *Hill v. Owens*, 292 Ga. 380, 387, 738 S.E.2d 56, 63 (2013). It is likely that the procedures will change again before Tollette's execution is

scheduled.

Finally, in a recent 42 U.S.C. § 1983 action, the Eleventh Circuit indicated that an in inmate was not entitled to the types of discovery that Tollette requests. The Court explained that "[n]either the Fifth, Fourteenth, or First Amendments afford [an inmate] the broad right to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters." *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1267 (11th Cir. 2014), *petition for cert. denied*, 134 S. Ct. 2838 (2014).

For these reasons, the Court denies Tollette's requests for discovery regarding Georgia's lethal injection procedures.

CONCLUSION

Based on the above, the Court denies Tollette's Motion for Leave to Conduct Discovery and an Evidentiary Hearing and instructs the Parties to comply with the June 23, 2014 Scheduling Order for future briefs.[10]   (ECF No. 14).

---

[10] The Parties are reminded that, when referring to the record (which includes Respondent's 110 exhibits), they are to comply with the citation format shown in the July 23, 2014 Scheduling Order. (ECF No. 14 at 3-4). While the Court did accept and consider Tollette's Memorandum of Law in Support of his Motion for Leave to Conduct Discovery and an Evidentiary Hearing, which did not contain the correct citation format, any future briefs that do not correctly cite the record will not be accepted by the Court.

SO ORDERED, this 22nd day of October, 2014.


                        s/Clay D. Land
                        CLAY D. LAND
                        CHIEF UNITED STATES DISTRICT JUDGE